IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| T.R., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 24-cv-00704-SRB |
| ) | |
| CLAY-PLATTE FAMILY ) | |
| MEDICINE, P.C., et al., ) | |
| ) | |
| Defendants. ) | |

# ORDER

Before the Court is Defendant Clay-Platte Family Medicine, P.C., Nathan D. Granger, Cobblestone Family Medicine Clinic, and Barry Pointe Family Care, LLC's (collectively "Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim. (Doc. #54.) For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## I.    FACTUAL BACKGROUND[1]

This case arises out of a data breach. Defendants are healthcare providers and family medicine clinics located throughout Missouri. Plaintiffs and other Class Members are patients, or parents of patients, of Defendants. To receive healthcare, Plaintiffs provided Defendants their Protected Health Information ("PHI") and Personally Identifiable Information ("PII") (collectively "Private Information"). Defendants stored Plaintiffs' information on their data network.

---

[1] The following allegations are taken from Plaintiffs T.R., D.S., T.S., Breanna Highfill, Charles Leap, Rachel Taylor, Travis Taylor, K.H., H.F., David Dempsey, C.C. on behalf of minor child A.C., Joshua Sartin, and Maria Dunn's (collectively "Plaintiffs") Amended Complaint without further citation or attribution unless otherwise noted. Because this matter comes before the Court on a motion to dismiss, the Court takes the facts pleaded in Plaintiffs' complaint as true and construes them in the light most favorable to Plaintiffs as the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). Additional allegations relevant to the parties' arguments are discussed in Section III.

On or around June 26, 2024, an unauthorized third party or individual accessed Defendants' network and downloaded Plaintiffs' and Class Members' Private Information. As a result, Plaintiffs' and other Class Members' Private Information—including their names, Social Security numbers, addresses, dates of birth, medical information, genders, and phone numbers—were accessed by the unauthorized party.

Three months later, Defendants published an online notice ("the Notice") disclosing that a data breach occurred. The Notice stated:

> On June 26, 2024, Clay Platte Family Medicine, along with the providers they share patients with—Summit Family and Sports Medicine Clinic, Cobblestone Family Medicine Clinic, and Barry Pointe Family Medicine Clinic ("the Clinics")—detected suspicious activity in their network environment. Upon discovery of this incident, the Clinics promptly took steps to secure their network and engaged a specialized cybersecurity firm to investigate the nature and scope of the incident. As a result of the investigation, the Clinics learned that an unauthorized actor potentially accessed and acquired certain files and data stored within their network.
>
> Upon learning this, the Clinics launched a review of the potentially affected data to identify the individuals and information involved. On September 10, 2024, the Clinics identified persons whose personal health information ("PHI") was potentially included within the impacted data.

(Doc. #13, pp. 8-9.)

Plaintiffs allege that Defendants' inadequate security practices led to the data breach. Plaintiffs allege that Defendants' network was not encrypted, and Defendants had inadequate safety and security protocols governing Private Information at the time of the breach. Further, Plaintiffs allege that Defendants had a duty to protect patients' Private Information which included training and supervising their employees regarding proper Private Information handling policies and procedures under the Health Insurance Portability and Accountability Act ("HIPAA"), the Health Information Technology Act ("HITECH"), and privacy laws of Missouri.

As a result of the data breach, Plaintiffs allege they received "disruptive scam phone calls, texts, and emails on a daily basis" and notifications by credit monitoring services that their "PII and PHI has been disseminated on the Dark Web" which resulted in "multiple hours" spent protecting themselves from identity theft. (Doc. #13, pp. 33-34.)

On January 27, 2025, Plaintiffs filed their Amended Complaint. The Amended Complaint asserts eight claims: Count I—Breach of Implied Contract; Count II—Negligence; Count III—Invasion of Privacy by Public Disclosure of Private Facts; Count IV—Breach of Fiduciary Duty of Confidentiality; Count V—Negligent Training and Supervision; Count VI—Negligence *Per Se*; Count VII—Invasion of Privacy; and Count VIII—Violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.101, *et seq*. Defendants have moved to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The parties' arguments are addressed below.

## II. LEGAL STANDARD

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citation omitted). "In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks and citation omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (internal quotation marks and citation omitted). Given that Defendants do not challenge the accuracy of the allegations in

3

Plaintiffs' Complaint, the Court considers Defendants' argument that subject-matter jurisdiction is lacking to be a facial attack.

A defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When, taken as true, the facts "raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claim, the Court should deny a motion to dismiss. *Twombly*, 550 U.S. at 556.

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

##### i. Class Action Fairness Act

Plaintiffs argue that this Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because "this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Plaintiff and members of the Classes are citizens of states that differ from at least one Defendant." (Doc. #13, p. 6.) Defendants argue that this Court lacks jurisdiction because two CAFA mandatory jurisdictional exceptions apply, the "home-state exception" and the "local controversy exception." (Doc. #54, p. 2.)

CAFA expanded this Court's diversity jurisdiction to class action lawsuits of sufficient size, amount in controversy, and which are minimally diverse. 28 U.S.C. § 1332(d). This Court

has jurisdiction if at least one plaintiff and defendant are of diverse citizenship, there are at least 100 class members, and the amount in controversy exceeds $5 million. *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023); 28 U.S.C. § 1332(d)(2) and (d)(5). The Court "shall decline to exercise jurisdiction" if either the "local controversy exception" or "home state exception" apply. *Luebbers v. BJC Health Sys.*, No. 24-1500, 2025 U.S. Dist. LEXIS 31286, at *4 (E.D. Mo. Feb 21, 2025). The party opposing jurisdiction bears the burden of establishing that an exception to jurisdiction applies. *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1093 (8th Cir. 2021).

The local controversy exception applies when (1) greater than two-thirds of the members of a proposed plaintiff class are citizens of the State in which the action was originally filed; (2) a defendant from who "significant relief is sought . . . whose alleged conduct forms a significant basis for the claims . . . is a citizen of the State in which the action was originally filed;" and (3) the "principal injuries resulting from the alleged conduct" were incurred in the State in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(A). The home state exception applies when two-thirds or more of a proposed plaintiff class and the primary defendants are citizens of the State in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B).

There is no dispute that each Defendant is a Missouri Citizen, any injury occurred in Missouri, and that Missouri is the state in which the action was originally filed. At issue is whether two-thirds or more of the proposed class are citizens of Missouri. Defendants argue that "[t]he class consists of at most 53,916 individuals, of which notice was sent to 50,325 with home addresses in Missouri—meaning 93% of the class consists of Missouri citizens." (Doc. #55, p. 4.) Defendants argue from this, it "stands to reason" the home state exception or the local controversy exception applies. (Doc. #55, p. 4.) However, last-known addresses do not stand as persuasive evidence that a CAFA exception exists. *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d

5

263, 265-6 (8th Cir. 2015) (finding the general rule that a "court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses" persuasive.). Any doubt about the applicability of a CAFA exception should be resolved in favor of the non-moving party. *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010). Accordingly, Defendants have not met their burden of proof that a CAFA exception applies at this time and the Court will continue to exert jurisdiction over the case.

### ii. Standing

Defendants also argue that this case should be dismissed for lack of standing because Plaintiffs "have not met their burden to show an injury-in-fact" as the data breach has only "increased their risk of identity theft and fraud." (Doc. #55, p. 6.) Further, Defendants argue that even if Plaintiffs sufficiently plead injury, "they have not alleged facts connecting any injury to Defendants' conduct." (Doc. #55, p. 8.)

> Constitutional standing . . . is a threshold question that determines whether a federal court has jurisdiction over a plaintiff's claims . . . This limitation imposes as an irreducible constitutional minimum the burden on [plaintiffs] to establish that [they] personally (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

*Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) (internal citations and quotations omitted).

Time and effort monitoring credit reports and financial accounts in addition to receiving scam phone calls, texts, and emails are injuries in fact that support Plaintiffs' claims. *See Baldwin v. Nat'l Western Life Ins. Co.*, 21-04066, 2021 U.S. Dist. LEXIS 175229, at *10 (W.D. Mo. Sep. 15, 2021). Like the plaintiffs in *Baldwin*, Plaintiffs here suffered a concrete injury when their Private Information was publicly posted to the Dark Web, which then required

Plaintiffs to spend "multiple hours" monitoring their accounts to protect against identity theft following the data breach. (Doc. #13, pp. 33-34.)

Plaintiffs further allege that following the data breach, Plaintiffs experienced "scam phone calls, texts, and emails on a daily basis." (Doc. #13, pp. 33-34.) The Court must "draw all reasonable inferences in the nonmovant's favor." *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020) (internal citation omitted). The Court can reasonably infer that the daily spam phone calls, texts, and emails are causally linked to the data breach. The Court finds that Plaintiffs have sufficiently shown that they suffered an injury-in-fact, that the injury was connected to Defendants' conduct, and that the injury is likely to be redressed by a favorable judicial decision. Therefore, Plaintiffs have established they have standing to bring claims against Defendants.

### B. Failure to State a Claim

#### i. Count I—Breach of Implied Contract

Plaintiffs allege that by providing their Private Information, an implied contract was entered "whereby Defendants became obligated to reasonably safeguard Plaintiffs' and the other Class members" Private Information and promptly notify them of any data breach. (Doc. #13, p. 70.) The alleged breach of this contract occurred when Defendants failed "to take reasonable measures to safeguard [Plaintiffs'] PHI and PII" by not encrypting the Private Information contained in Defendants' network and failed to promptly provide adequate notice of the data breach. (Doc. #13, pp. 3, 70.)

Defendants argue that Plaintiffs' Count I should be dismissed because "they fail to allege facts showing mutual assent and consideration." (Doc. #55, p. 10.) Defendants contend that mutual assent has not been sufficiently alleged because Defendants did not make "any additional promises regarding loss prevention" or "cybersecurity obligations." (Doc. #55, p. 10.)

7

Defendants claim consideration has not been shown because "Plaintiffs do not allege that Defendants received a benefit or [were] otherwise unjustly enriched by any act of Plaintiffs." (Doc. #55, p. 10.)

"There is no difference in legal effect between an express contract and one implied in fact. The distinction lies merely in the manner of manifesting mutual assent." *Nickel v. Stephens College*, 480 S.W.3d 390, 397 n.6 (Mo. App. W.D. 2015) (internal citation omitted). "When determining whether an implied contract exists, the court will consider the parties' acts, conduct, and statements as a whole; whether there was a meeting of the minds on the agreement's essential elements; the parties' intent to enter into a contract upon defined terms; and whether one of the parties has relied in good faith upon the alleged contract." *Id.*

Plaintiffs allege facts that allow a reasonable inference that mutual assent existed. Plaintiffs allege that to receive healthcare, Plaintiffs were "required, directly or indirectly" to provide their Private Information to Defendants. (Doc. #13, p. 33.) "It is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to [] protect the information sufficiently." *Mackey v. Belden, Inc.*, No. 21-00149, 2021 U.S. Dist. LEXIS 14500, at *31 (E.D. Mo. Aug. 3, 2021) (internal citation omitted). Plaintiffs further allege that Defendants were subject to and aware of duties imposed by federal law, including HIPAA, which limits the use and disclosure of protected health information and requires covered entities to implement reasonable safeguards to prevent unauthorized access or disclosure. The Court finds that Plaintiffs plausibly allege mutual assent regarding Defendants' loss prevention and cybersecurity obligations.

Plaintiffs also plausibly allege consideration. "[C]onsideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or responsibility, given, suffered or undertaken by the other." *Moore v. Seabaugh*, 684 S.W.2d 492, 496 (Mo. App. S.D. 1984) (citations omitted). Plaintiffs were allegedly required to provide their Private Information to Defendants and, in exchange for protecting Plaintiffs' Private Information, Defendants benefited from Plaintiffs' continued use of their healthcare services. The Court finds that Plaintiffs plausibly allege consideration.

The Court finds that Plaintiffs have sufficiently alleged the existence and breach of an implied contract requiring Defendants to adequately secure Plaintiffs' Private Information. Whether such a contract actually existed is a question of fact inappropriate for resolution at the motion to dismiss stage. *See Estate of Briggs*, 449 S.W.3d 421, 425 (Mo. Ct. App. 2014) (citation omitted). The Court does not dismiss Count I.

### ii. Count II—Negligence; Count V—Negligent Training and Supervision; Count VI—Negligence *Per Se*

"In an action for negligence, the plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach was causally connected to the plaintiff's injury." *D.J. v. First Student, Inc.*, 707 S.W.3d 581, 586 (Mo. 2025). Defendants argue that Plaintiffs' negligence claims, Counts II, V, and VI, should be dismissed because Defendant owed no "common law duty to safeguard information from a criminal cyberattack" and Plaintiffs fail to "plead actual, imminent damages, nor is proximate causation shown." (Doc. #55, pp. 12-13.) The Court disagrees with Defendants.

"A duty of care can be established by a statute, contract, or a special relationship between the parties." *Davis v. MCI Commc'ns Servs., Inc.*, No. 05-2267, 2006 WL 8459141, at *3 (E.D. Mo. Mar. 13, 2006). The "concept of a special relationship exists when one entrusts

9

himself to the protection of another and relies upon that person to provide a place of safety." *Faheen by and through Hebron v. City Parking Corp.*, 734 S.W.2d 270, 274 (Mo. App. E.D. 1987). "Given the highly sensitive nature of PHI shared in the health care context, the patient-provider relationship is even more sacred and is clearly recognized as special under Missouri law." *Negron v. Ascension Health*, No. 24-00669, 2025 WL 2710014, at *9 (E.D. Mo. Sept. 23, 2025) (citing *J.J. by & through C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.*, 675 S.W.3d 259, 266 (Mo. App. E.D. 2023). Plaintiffs allege facts to support that they entrusted their Private Information to Defendants as part of a patient-provider relationship and relied on Defendants to protect their Private Information. The Court finds that Defendants owed Plaintiffs a duty to safeguard their Personal Information.

Defendants also argue that "Plaintiffs' negligence-based claims run afoul of Missouri's economic loss rule" because "Plaintiffs do not allege any personal injury or property damage, yet they seek money damages." (Doc. #55, p. 12.) "Missouri [law] prohibits a cause of action in tort where the losses are purely economic." *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995). However, district courts have generally concluded that "lost time" allegations may satisfy the injury requirement for data breach negligence claims. *See, e.g., In re: Netgain Tech., LLC*, No. 21-1210, 2022 WL 1810606, at *14 (D. Minn. June 2, 2022) ("Courts have held that damages like monitoring and lost time are cognizable"); *Baldwin v. Nat'l W. Life Ins. Co.*, No. 21-04066, 2021 U.S. Dist. LEXIS 175229, 2021 WL 4206736, at *3 (W.D. Mo. Sept. 15, 2021) ("[P]urported time and effort monitoring accounts can qualify as an injury to support Plaintiffs' claims"); *In re Numotion Data Incident Litig.*, No. 24-00545, 2025 U.S. Dist. LEXIS 4509, at *42 (M.D. Tenn. Jan. 9, 2025). Plaintiffs allege that they have "spent significant time dealing with the Data Breach," including

10

> researching and verifying the legitimacy of the Data Breach; monitoring Plaintiff's credit card and other financial statements for any signs of fraudulent activity; monitoring credit reports; managing the disruptive scam phone calls, texts, and emails on a daily basis; reviewing and remaining vigilant against medical fraud.

(Doc. #13, pp. 33-34.) Given their allegations of lost time, the Court finds that Plaintiffs plausibly allege damages.

The Court also disagrees with Defendants' argument that Plaintiffs did not plausibly allege proximate causation. "The general test of proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence." *Robinson v. Missouri State Highway & Transp. Comm'n*, 24 S.W.3d 67, 78 (Mo. Ct. App. 2000). "This is determined by looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct." *Id.* As discussed, Plaintiffs allege injuries—including lost time—from the data breach. It is reasonable to infer that the data breach was a probable consequence of Defendants' alleged failure to protect Plaintiffs' Private Information. The Court finds that Plaintiffs plausibly allege proximate causation.

Lastly, Defendants argue that Plaintiffs' negligence *per se* claim is insufficient because "none of the statutes undergirding the claim (HIPAA, the FTC Act, and HITECH) allow for a private cause of action." (Doc. #55, p. 12.) The Court disagrees. "There is a difference between whether a statute creates a private right of action permitting an individual to initiate a lawsuit seeking relief based on a violation of the statute, and whether a statute establishes a standard of care supporting recovery on a theory of negligence per se[.]" *J.J.'s Bar & Grill, Inc. v. Time Warner Cable Midwest, LLC*, 539 S.W.3d 849, 866 n.13 (Mo. App. W.D. 2017). "HIPAA creates a statutory duty of confidentiality that, when violated, gives rise to a common law claim of negligence *per se* under Missouri law." *Negron*, No. 24-00669, 2025 WL 2710014, at *10

11

(citing *J.J. by & through C.W.*, 675 S.W.3d at 266). Plaintiffs allege that Defendants violated HIPAA, and therefore plausibly allege negligence *per se*.

The Court finds that Plaintiffs have plausibly alleged that Defendants owed them a duty of care, Defendants breached that duty, Defendant's breach was causally connected to the Plaintiffs' injury, and Plaintiffs suffered cognizable damages. The Court does not dismiss Counts II, V, and VI.

### iii. Count III—Invasion of Privacy by Public Disclosure of Private Facts; Count VII—Invasion of Privacy through Intrusion upon Seclusion

The elements of invasion of privacy by public disclosure of private facts are: (1) publication, (2) absent any waiver or privilege, (3) of private matters in which the public has no legitimate concern, and (4) such as to bring shame or humiliation to a person of ordinary sensibilities. *Corcoran v. Sw. Bell Tel. Co.*, 572 S.W.2d 212, 214–15 (Mo. App. W.D. 1978). Defendants argue that Plaintiffs fail to plausibly allege the first element, and the Court agrees. While Plaintiffs allege that "Defendants wrongfully disseminated Plaintiffs' and the other Class Members' PHI and PII to unauthorized persons," (Doc. #13, p. 79), this allegation is conclusory. The Amended Complaint plausibly alleges that Plaintiffs' Private Information was stolen from Defendants, not that Defendants disseminated it to unauthorized third parties. The Court finds that Plaintiffs fail to state a claim of invasion of privacy by public disclosure of private facts.

Defendants also argue that Plaintiffs cannot state a claim for invasion of privacy through intrusion upon seclusion. (Doc. #55, p. 12.) To state an intrusion upon seclusion claim, a plaintiff must show: (1) the existence of a secret and private subject matter; (2) a right possessed by plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter by defendant through some method objectionable to the reasonable person. *See Corcoran v. Sw. Bell Tel. Co.*, 572 S.W.2d 212, 215 (Mo. App. W.D. 1978); *Ryno v. Hillman*,

12

641 S.W.3d 385, 393 (Mo. App. S.D. 2022); *Ruzicka Elec. & Sons, Inc. v. Int'l Bhd. of Elec. Workers, Local 1, AFL-CIO*, 427 F.3d 511, 524 (8th Cir. 2005). Defendants argue that Plaintiffs fail to plausibly allege the third element, and the Court agrees.

The requirement for intrusion upon seclusion is not that Defendants unreasonably handled the Private Information, but that Defendants unreasonably obtained the Private Information. *Mackey*, No. 21-00149, 2021 U.S. Dist. LEXIS 14500, at *33-34. Plaintiffs allege that "Defendants failed to protect and released to unknown and unauthorized third parties the PII and PHI of Plaintiffs and the Classes," (Doc. #13, p. 86), but fail to allege that Defendants unreasonably obtained the Private Information from Plaintiffs. Therefore, Plaintiffs fail to state a claim for intrusion upon seclusion. The Court dismisses Counts III and VII.

### iv. Count IV—Breach of Fiduciary Duty of Confidentiality

The elements of a claim for breach of fiduciary duty are: (1) a fiduciary relationship; (2) the breach of a fiduciary obligation; (3) proximate cause; (4) damages; and (5) no other recognized tort encompasses the facts alleged. *Costa v. Allen,* 274 S.W.3d 461, 462 (Mo. 2009). Defendants dispute breach, proximate cause, and damages.

Hospitals have a "fiduciary duty of confidentiality not to disclose any medical information received in connection with [the] treatment of the patient." *Brandt v. Med. Def. Assocs.*, 856 S.W.2d 667, 670 (Mo. 1993); *Fierstein v. DePaul Health Ctr.*, 949 S.W.2d 90, 92 (Mo. App. E.D. 1997). Defendants argue that "Plaintiffs cannot plausibly or credibly allege Defendants disclosed their data[.]" (Doc. #55, p. 14) (quotations omitted). The Court agrees. Although Plaintiffs plausibly allege that unauthorized third parties accessed their Private Information because Defendants failed to protect their Private Information, Plaintiffs fail to allege facts that Defendants disclosed their Private Information to unauthorized third parties.

13

*Compare id.* (finding cause of action for breach of fiduciary duty of confidentiality because the health center prematurely sent patient's medical records to her ex-husband's attorney). The Court finds that Plaintiffs fail to state a claim for breach of fiduciary duty of confidentiality and dismisses Count IV.

> v. **Count VIII—Violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.101, *et seq.***

The MMPA prohibits misrepresentations and the concealment or omission of material facts "in connection with" the sale of services and creates a civil action for any buyer who suffers an ascertainable loss "as a result of" the use of an unlawful practice. Mo. Rev. Stat. § 407.010(4), § 407.020, § 407.025. An "unfair practice" is defined to include unethical practices that present a risk of or cause substantial injury to consumers. 15 C.S.R. § 60-8.020.

Plaintiffs allege that "Defendants concealed, suppressed, and omitted material facts regarding their inadequate data security practices in connection with marketing and providing their healthcare services[.]" (Doc. #68, p. 14.) Defendants argue that they "must actually sell data security services in order for any allegedly inadequate data security to be actionable" under the MMPA. (Doc. #69, p. 10.) The Court agrees with Defendants.

Plaintiffs cannot state an MMPA claim where the defendant "did not sell data security services," but rather put data security measures in place in connection with its sale of other services. *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017). In *Kuhns*, a defendant brokerage company represented in its privacy statements that it would protect clients' information, but the company failed to maintain adequate cybersecurity measures and its databases were breached. *Id.* at 717. Noting that the MMPA requires an unlawful act and loss "in relation to" a sale and purchase of a service, the Eighth Circuit concluded that the plaintiff failed to state an MMPA claim because the plaintiff purchased brokerage services, not data

14

security services. *Id.* at 719. Similarly, Defendants here do not sell data security services but put data security measures in place in connection with the sale of their healthcare services. *See Negron*, No. 4:24-CV-00669-JAR, 2025 WL 2710014, at *15 (applying *Kuhns* to a data breach case involving healthcare systems and finding that plaintiffs failed to state an MMPA claim). The Court finds that Plaintiffs fail to state an MMPA claim and dismisses Count VIII.

## IV.     CONCLUSION

Accordingly, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. #54) is GRANTED IN PART and DENIED IN PART. The motion is granted insofar as the Court DISMISSES Count III—Invasion of Privacy by Public Disclosure of Private Facts, Count IV—Breach of Fiduciary Duty of Confidentiality, Count VII—Invasion of Privacy through Intrusion upon Seclusion, and Count VIII—Violations of the Missouri Merchandising Practices Act. The motion is denied in all other respects.

**IT IS SO ORDERED.**

*/s/ Stephen R. Bough*
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 3, 2025.